

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 16, 1962



Over\_\_\_\_\_ C-26
where conflicts

Honorable Dean Martin
County Attorney
Grayson County
Sherman, Texas

Opinion No. WW-1382

Re: Whether Grayson County may dis-
burse funds from the four consti-
tutional county funds to acquire
lands, easements, and rights-of-
way needed for construction of
water control and soil conserva-
tion structures, and related
questions.

Dear Sir:

Your request for opinion from this office states in
part as follows:

"The Grayson County Commissioners' Court by
its order passed on March 6, 1962, entered into
an agreement with the United States Department of
Agriculture Soil Conservation Service wherein the
County is to furnish funds for certain phases of
construction and maintenance of water control and
soil conservation structures to be built by the
Soil Conservation Service.

"Section 1, Paragraph A, of the agreement
states the County will acquire without cost to the
Federal Government such land, easements or rights-
of-way as will be needed in connection with the
works of improvements.

"Section D, Paragraph 4, of the agreement
states that sufficient funds shall be budgeted
annually by the County to carry out the mainten-
ance of these structures as provided by the con-
tract.

"Grayson County has taxes levied for the
four constitutional operating funds as follows:

General Fund
Road and Bridge Fund
Permanent Improvement Fund
Jury Fund"

You then ask the following three questions:

"1. From what existing Grayson County Fund or funds can monies be legally expended to acquire land, easements or rights-of-way needed for the U. S. Department of Agriculture Soil Conservation Service in connection with construction of water control and soil conservation structures?

"2. From what existing Grayson County fund or funds can monies be legally expended for the maintenance of water control and soil conservation structures constructed by the U. S. Department of Agriculture Soil Conservation Service?

"3. If your ruling is that Grayson County has no existing funds from which the above expenditures can be made, then what is the degree of liability of the County Auditor and the sureties on his bond, if said auditor approves warrants illegally drawn on existing county funds?"

Your letter also informs us that Grayson County has not complied with the provisions of Article 7048a of Vernon's Civil Statutes, which provides in part as follows:

"Sec. 2. From and after January 1, 1951, the several counties of the State be and they are hereby authorized to levy, assess and collect ad valorem taxes upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads, not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of the State, provided the revenue therefrom shall be used as provided in this Act for the construction and maintenance of Farm-to-Market and Lateral Roads or for Flood Control and for these two (2) purposes only.

". . .

"Sec. 3. Taxes levied and collected under the provisions of this Act shall be credited by the Commissioners Court to separate funds known as the Farm-to-Market and Lateral Road Fund, to be used solely for Farm-to-Market and Lateral Roads within such county, and to the Flood Control Fund, to be used solely for Flood Control purposes within such county, said credits to be made proportionately in accordance with the allocation adopted at the election called under the provisions of Sections 7 and 8 of this Act.

Honorable Dean Martin, page 3   (WW-1382)


". . .

"Sec. 5.  The funds transferred to the
Flood Control Funds shall be under the juris-
diction and control of the Commissioners Court
of such county and shall be used solely for
Flood Control purposes.  All or part of said
funds may be used in connection with the plans
and programs of the Federal Soil Conservation
Service and the State Soil Conservation Dis-
tricts and the State Extension Service, Conser-
vation and Reclamation Districts, Drainage
Districts, Water Control and Improvement Dis-
tricts, Navigation Districts, Flood Control
Districts, Levee Improvement Districts and
Municipal Corporations, <u>and such funds may be
expended by the Commissioners Court in accord-
ance with this Act for flood control purposes,
including all soil conservation practices such
as contouring, terracing, tank building and
all other practices actually controlling and
conserving moisture and water, within any said
county and political subdivision thereof for
Flood Control and Soil Conservation programs</u>,
provided that such plans for improvement are
approved by such county and political subdivi-
sion."  (Emphasis added)

In Attorney General's Opinion No. WW-595 (1959), the
writer was concerned with the situation wherein the Navarro-Hill
County Soil Conservation District had not complied with the pro-
visions of Article 7048a of Vernon's Civil Statutes, but desired
to construct and maintain dams, nevertheless.  Since no county
tax funds were therefore levied for this purpose, the opinion
held as follows:

"Navarro County can spend tax money to
maintain dams constructed in Navarro County by
the Navarro-Hill Soil Conservation District un-
der certain provisions of Articles 7048a and
7048b <u>if such money is available to Navarro
County under Section 10(a)(4) of Article 7048a</u>."
(Emphasis added)

In addition Opinion WW-596 (1959) also held that funds
could not be expended for the maintenance of soil conservation
projects unless there was a compliance with the provisions of Ar-
ticle 7048a.

Subsequent to the release of the above cited opinions, the Legislature passed Article 1109k, and in Section 3 of said statute specifically authorized the disbursement of Permanent Improvement Funds for carrying out the purposes of the Act. However, an inspection of that statute leads us to the conclusion that its provisions were to apply when a soil conservation district, water control and improvement district, or drainage district had been created. No such district having been created in Grayson County, it follows that the provisions of Article 1109k do not apply. For the above stated reasons Article 1581e is likewise inapplicable.

After a consideration of the above authorities, we advise you that Article 7048a represents a detailed method for the establishment and maintenance of water control and soil conservation structures, and that no tax money may be expended for the purposes outlined in your letter unless taxes were levied pursuant to the provisions of Article 7048a and for those purposes. Many opinions from this office have held that disbursements may not be made from the General or Permanent Improvement Funds for the purposes outlined in your letter. Attorney General's Opinions Nos. 0-37 (1939), 0-413 (1939), and 0-629 (1939).

Since Grayson County has no Flood Control Funds, you are therefore advised that Grayson County has no funds available for purchasing land and rights-of-way, or for the maintenance of water control and soil conservation structures. Your first and second questions are accordingly answered negatively.

As to your third question, if the County Auditor approves warrants drawn on the four constitutional funds to pay for any items in conjunction with the water control and conservation structures, it follows that such disbursements were unauthorized by law and consequently illegal.

After the County Auditor has assumed his office by making bond and taking an oath according to the provisions of Article 1649, he is governed by Article 1651 which provides in part as follows:

"The Auditor shall have a general oversight of all the books and records of all the officers of the county, district or state, who may be authorized or required by law to receive or collect any money, funds, fees, or other property for the use of, or belonging to, the county; and he shall see to the strict enforcement of the law governing county finances." (Emphasis added)

In addition Article 1653 states as follows:

"He shall have continual access to and shall examine all the books,  accounts, reports, vouchers and other records of any officer, the orders of the commissioners court, relating to finances of the county, and all vouchers given by the trustee of all common school districts of the county and shall inquire into the correctness of same." (Emphasis added)

Article 1660 states as follows:

"All claims, bills and accounts against the county must be filed in ample time for the auditor to examine and approve same before the meetings of the commissioners court.  No claim, bill or account shall be allowed or paid until it has been examined and approved by the county auditor.  The auditor shall examine the same and stamp his approval thereon.  If he deems it necessary, all such accounts, bill, or claims must be verified by affidavit touching the correctness of the same.  The auditor is hereby authorized to administer oaths for the purposes of this law."

Article 1661 states as follows:

"He shall not audit or approve any such claim unless it has been contracted as provided by law, nor any account for the purchase of supplies or materials for the use of said county or any of its officers, unless, in addition to other requirements of law, there is attached thereto a requisition signed by the officer ordering same and approved by the county judge.  Said requisition must be made out and signed and approved in triplicate by the said officers, the triplicate to remain with the officer desiring the purchase, the duplicate to be filed with the county auditor, and the original to be delivered to the party from whom said purchase is to be made before any purchase shall be made.  All warrants on the county treasurer, except warrants for jury service, must be countersigned by the county auditor."  (Emphasis added)

Under these rules it is our opinion that the County Auditor and the sureties on his bond are liable for the amount of money or disbursements he approved without proper authority. This conclusion results from a violation of the terms of his bond "conditioned for the faithful performance of his duties,"

as required by Article 1649.  Opinion No. 0-4715 (1942).  And see <u>Welch et al. v. Kent</u>, 153 S.W.2d 284 (Civ.App. 1941); <u>Jeff Davis County v. Davis</u>, 192 S.W. 291 (Civ.App. 1917, error ref.).

## SUMMARY

Since Grayson County has not complied with the provisions of Article 7048a of Vernon's Civil Statutes, there are no existing funds that may be expended for the purchase of land or maintenance of water control and soil conservation structures constructed by the U. S. Department of Agriculture Soil Conservation Service.

If the County Auditor approves illegal and unauthorized disbursements drawn on existing county funds, he and the sureties on his bond are liable for the amounts illegally expended.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Fred D. Ward
Fred D. Ward
Assistant

FDW:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Malcolm Quick
Morgan Nesbitt
Dudley McCalla

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Leonard Passmore